UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

VALIANT LEON WHITE,

        Plaintiff,                   Case No. 2:17-cv-99

v.                                      Honorable Gordon J. Quist

UNKNOWN MCKAY et al.,

        Defendants.
_____/

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's pro se complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual allegations

      Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility and the Kinross Correctional Facility

(KCF) in Kincheloe, Chippewa County. Plaintiff sues Sergeant Unknown McKay, Prison Guard Unknown Goodell, Hearing Officer Unknown Theut, Inspector Unknown Huhtala, Grievance Coordinator Unknown Anderson, Prison Guard Unknown Klingshim, Sergeant Unknown Johnson, Administrative Assistant D. Mastaw, Assistant Deputy Warden B. Bigger, Deputy Warden J. Harwood, and Misconduct Hearing Officer Unknown O'Brien.

Plaintiff alleges that on May 31, 2014, Defendant Goodell wrote Plaintiff a misconduct for being "out of place" after Plaintiff used the restroom before count cleared. Later that evening, Defendant Goodell instructed Plaintiff to go to see Defendant McKay for a ticket review. Plaintiff replied that, pursuant to MDOC policy, he was not required to attend a ticket review. Plaintiff then stated that he planned on filing a grievance on Defendant Goodell for violating policy. Defendant Goodell responded to Plaintiff by stating, "You're threatening me with a grievance. Pack you[r] property because you're going to the hole. You don't threaten me with a grievance."

Defendant Goodell subsequently wrote a misconduct ticket on Plaintiff for disobeying a direct order, as follows:

> ON 5-31-14 AT 20:30 HRS FROM A FEW FEET AWAY WITH DIRECT EYE CONTACT, I GAVE PRISONER WHITE #225440 A DIRECT ORDER TO GO TO THE SERGEANTS OFFICE. HE LOOKED DIRECTLY AT ME AND KEPT WALKING AWAY. AT NO TIME HE COMPLY WITH MY ORDER. WHITE WAS IDENTIFIED BY HIS MDOC ID CARD AND THE G UNIT COUNT BOARD.

*See* ECF No. 1-6, PageID.22. Defendant McKay revoked Plaintiff's bond and raised the misconduct to a class I violation, stating that Plaintiff was unmanageable in the general population.

*Id.* Plaintiff was then placed in segregation. While Plaintiff was in segregation, Defendant Goodell destroyed Plaintiff's legal supplies, typing paper, envelopes, and other items.

Defendant Theut found Plaintiff guilty of the misconduct written by Defendant Goodell on June 3, 2014. The evidence considered in the hearing included Plaintiff's statement that he did not want to participate in the ticket review and that he refused a request to attend the review, and then a direct order. *See* ECF No. 1-8, PageID.25. Defendant Theut gave the reasons for finding as:

> Prisoner White was given a direct and reasonable order on 5-31-14 at 2030 hrs by the reporting officer to go to the [Sergeant's] Office. Prisoner White heard and understood the order because he looked directly at the reporting officer and kept walking away. Prisoner White voluntarily failed to follow the order and did not go to the [Sergeant's] office. Prisoner White admits that he was given the order and did not go and it is no defense to the charge that he did not want to go. Pursuant to the hearings handbook the order is not unreasonable because pursuant to the hearings handbook compliance with the order would not create a risk [of] serious injury to the prisoner's physical wellbeing, he is physically able to comply and the order did not interfere with a previous order given to the prisoner. The reporting staff member is clear and detailed in his statements and found credible. The charge is upheld.

*Id.*

On December 9, 2016, Defendant Huhtala approached Plaintiff while he was working in food service and ordered him to come speak with him in "the back," away from other staff and prisoners. Plaintiff protested by stating that there was nothing that could not be discussed in the presence of his supervisor. Plaintiff claims that this conduct was designed to make it look as if he was a prison informant, which placed his life in danger. Plaintiff states that Defendant Huhtala became angry and retaliated against Plaintiff by laying him in and sending him back to his unit. Plaintiff wrote a grievance on Defendant Huhtala.

3

On December 12, 2016, Defendant Anderson called Plaintiff to his office and stated that he was going to reject Plaintiff's grievance because Defendant Huhtala was going to write a misconduct on Plaintiff, so Plaintiff could raise his issue through the misconduct appeal process. Plaintiff objected that this rejection was not proper and told Defendant Anderson that he would be writing a grievance on him. Also on December 12, 2016, Defendant Klingshim told Plaintiff that "the Inspector" wanted to see him. Plaintiff replied that he had already told the inspector that he did not want to speak to him. Defendant Klingshim then spoke with Defendant Huhtala on the phone, stating "No, I didn't give him a direct order." Defendant Klingshim subsequently told Plaintiff that Defendant Huhtala was forcing him to write a misconduct on Plaintiff for disobeying a direct order and that Plaintiff was going to segregation. While Plaintiff was changing into a segregation jumpsuit, Defendant Huhtala came to his cell door and stated, "Oh you don't want to lock at KCF huh?" Plaintiff accused Defendant Huhtala of retaliating against him for refusing to answer questions and writing a grievance. Defendant Huhtala replied, "Oh, we got a lot to talk about."

Defendant Johnson escorted Plaintiff to segregation. Plaintiff alleges that Defendant Goodell destroyed Plaintiff's personal and legal property on December 12, 2016, while Plaintiff was being escorted to segregation. After Plaintiff refused to answer Defendant Huhtala's questions for a third time, Defendant Johnson reviewed the class II misconduct ticket with Plaintiff that had been written by Defendant Klingshim for disobeying a direct order. During the review, Defendant Johnson elevated the misconduct to a class I violation, stating that Plaintiff was unmanageable. *See* ECF No. 1-13, PageID.44. When Plaintiff questioned Defendant Johnson's authority to elevate the misconduct, an unknown health care officer also asked Defendant Johnson

4

about his authority to elevate the ticket. Defendant Johnson merely stated that he had the authority to elevate the ticket.

On December 19, 2016, Defendant O'Brien conducted a hearing on the misconduct ticket. During the hearing, Defendant O'Brien noted that the order would only be considered unreasonable if compliance would create a significant risk of serious harm to the prisoner's physical wellbeing. Plaintiff states that Defendants Mastaw, Bigger, and Harwood subsequently had Plaintiff transferred to URF because Plaintiff was refusing to lock at KCF. On January 3, 2017, Plaintiff asked the housing unit counselor at URF why he was transferred from KCF. She responded, "the lie was placed on the computer to cover their asses." On January 9, 2017, URF Security Classification Committee members stated that KCF had fabricated the records when they asserted that Plaintiff was refusing to reside at KCF.

Plaintiff claims that Defendants' conduct was motivated by a desire to retaliate against him. Plaintiff also claims that Defendants engaged in a conspiracy, and that they violated his rights under the Eighth and Fourteenth Amendments. Plaintiff seeks damages.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

5

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the Court notes that Defendants Theut and O'Brien are employed as hearing officers in the MDOC. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity from damages in relation to

actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); Mich. Comp. Laws §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Plaintiff's action fails because Defendants Theut and O'Brien are absolutely immune from suit for damages under the circumstances of this case.

Plaintiff claims that Defendant Anderson improperly rejected the grievance that Plaintiff filed on Defendant Huhtala. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Anderson's conduct did not deprive him of due process.

Moreover, Defendant Anderson's actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's

7

constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 Fed. App'x 411, 415-416 (6th Cir. 2014) (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n. 6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). When Plaintiff attempted to file the grievance at issue, Defendant Anderson told him that he could appeal the misconduct that was being written by Defendant Huhtala in order to exhaust his claims against Defendant Huhtala, so that filing a grievance was unnecessary. In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim.

Plaintiff claims that Defendants Huhtala, Mastaw, Bigger, and Harwood were responsible for his transfer from KCF to URF. It is well established that a prisoner has no inherent constitutional right to be housed in a particular institution. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). The Supreme Court has held that even transfers having a substantial adverse impact on a prisoner do not compromise any constitutionally recognized liberty interests. *Meachum*, *supra*, at 224. "That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with more severe rules." *Id.* at 225.

There being no inherent right within the Constitution upon which Plaintiff's claim can be based, Plaintiff must look to state law.

> [I]f the state grants a prisoner a right or expectation that adverse action will not be taken against him except upon the occurrence of specified behavior, 'the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed.'

*Vitek v. Jones*, 445 US 480, 490-91 (1980), *quoting Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *see also Hewitt v. Helms*, 459 U.S. 460 (1983).

The Sixth Circuit has also said:

> When a state creates an entitlement and provides that it may not be defeated except upon a finding of a specific substantive predicate, the state's defeat of that entitlement without making such a finding is a violation of due process.

*Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985).

However, in light of the United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995), a plaintiff seeking to allege a procedural due process violation based on a state created liberty interest must not only show it is derived from mandatory language in a regulation, but also that it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300; *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). Plaintiff in this case fails to allege such a hardship. Therefore, Plaintiff's claim that he was denied procedural due process as a result of his transfer is without merit.

Plaintiff also claims that his misconduct tickets written by Defendants Goodell, Huhtala, and Klingshim violated his due process rights, as did the actions of Defendants McKay and Johnson in elevating the charges from class II violations to class I. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government

10

>impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

In addition, Plaintiff claims that Defendant Goodell violated his due process rights by destroying his legal and personal property while Plaintiff was being taken to segregation. Plaintiff's due process claim regarding the loss of his property is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim will be dismissed.

Plaintiff claims that Defendants McKay, Goodell, Huhtala, Klingshim, and Johnson all retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250

13

F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that Defendant Goodell wrote a misconduct ticket on him for disobeying a direct order after Plaintiff refused to attend a review of another misconduct and stated that he was going to file a grievance on Defendant Goodell for ordering him to attend the review. Defendant Goodell allegedly stated, "You're threatening me with a grievance. Pack you[r] property because you're going to the hole. You don't threaten me with a grievance."

In 2006, the Supreme Court concluded in *Hartman v Moore*, 547 U.S. 250 (2006), that a plaintiff bringing a First-Amendment retaliatory prosecution claim must plead and prove the absence of probable cause. In *Barnes v. Wright*, 449 F.3d 709 (6th Cir. 2006), the Sixth Circuit held that, applying *Hartman,* a claim of First-Amendment retaliatory arrest requires a plaintiff to plead and prove the absence of probable cause. The Supreme Court declined to decide whether a retaliatory arrest was actionable if supported by probable cause. *See Reichle v. Howards*, 132 S. Ct. 2088 (2012). Instead, the Court held that the officers were entitled to qualified immunity because it was not clearly established that an arrest supported by probable cause could give rise to a First Amendment violation. *Id.* at 2097.

A prison misconduct charge does not precisely parallel either an arrest or a prosecution, because there is no actual prosecutor or arresting officer, only a charging officer and a hearing officer. Nevertheless, a misconduct charge must be considered comparable to one of those two things. Accordingly, under the reasoning of *Hartman* and *Barnes* collectively, a prisoner claiming a retaliatory misconduct charge must plead and prove the absence of probable cause. Where a prisoner concedes the behavior but disputes the motive of the charging officer, the claims

14

are clearly barred. In this case, as noted above, Plaintiff concedes that he refused Defendant Goodell's direct order to go to the Sergeant's office.

In addition, in those cases in which a hearing officer has made a finding of guilt in a major misconduct proceeding, the claim will be barred by deference to the state's finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 914-17 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding is not subject to challenge in a § 1983 action). As described above, Plaintiff was found guilty of the misconduct by Defendant Theut following a hearing during which he had the opportunity to present a defense. Plaintiff admitted to disobeying a direct order. In addition, the issue of whether Plaintiff had a valid defense for the disobedience was actually litigated and decided in this case. Therefore, Plaintiff's retaliation claim against Defendant Goodell is properly dismissed. *Roberson v. Torres*, 770 F.3d 398, 404-05 (6th Cir. 2014).

Plaintiff claims that Defendants McKay and Johnson retaliated against him when they elevated class II misconducts written by Defendants Goodell and Klingshim to class I misconducts. However, Plaintiff fails to allege any facts showing that Defendants McKay and Johnson were motivated by a desire to retaliate against Plaintiff. Therefore, Plaintiff's retaliation claims against Defendant McKay and Johnson are properly dismissed.

Plaintiff claims that Defendant Huhtala retaliated against him by writing a misconduct on him for disobeying a direct order after Plaintiff refused to speak with him away from staff and other prisoners, which Plaintiff claims made it look as if he was an informant. However, Plaintiff did not have a constitutionally protected right to refuse a direct order to speak to Defendant Huhtala away from staff and other prisoners.

Plaintiff also contends that Defendant Huhtala ordered Defendant Klingshim to write a misconduct on Plaintiff when he refused to follow Klingshim's directions to go speak with

15

the Inspector. Plaintiff claims that this constituted retaliation by Defendants Huhtala and Klingshim. As set forth above, Plaintiff did not have a protected right to refuse to go where instructed by prison staff. Plaintiff was found guilty of the misconduct following a hearing conducted by Defendant Hearing Officer O'Brien. Defendant O'Brien considered Plaintiff's written statement that "the Inspector [Defendant Huhtala] tried to talk to him a few days before and he refused and he did not want to [speak] to him then or now because if the prisoners see him talking to the Inspector they will assume he is a snitch so complying would put him at risk." *See* ECF No. 1-14, PageID.45. Defendant O'Brien also noted that Plaintiff conceded that he had not been threatened by any prisoners. *Id.* Defendant O'Brien listed the reasons for the finding as:

> Officer Klingshirn [sic] gave a direct and reasonable order to Prisoner White to go up front on 12-12-16 at 1400 hrs. Prisoner White admits he heard and understood the order and did not comply. The order was capable of being performed, did not pose a significant risk of substantial harm and did not conflict with a prior order. It is not a defense that if he went up front then others would think he was snitching and then would want to harm him. His assumption that someone may think he was a snitch or his desire not to talk to the Inspector is not proof of any risk of substantial harm and he can choose to say nothing but still has to go up front when told to do so. If he feels being told to go up front is a violation of policy or the Inspector's trying to talk to him is [sic] then he can grieve but he has to comply.

*Id.* Therefore, Plaintiff's claims against Defendants Klingshim and Huhtala properly dismissed.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

16

(6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding in forma pauperis, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

Dated: 02/02/2018　　　　　　　　　　　　　　/s/ Gordon J. Quist
　　　　　　　　　　　　　　　　　　　　　　　Gordon J. Quist
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge