UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VALIANT LEON WHITE
#225440, JR,

Case No. 2:17-cv-00099

Hon. Gordon J. Quist
U.S. District Judge

    Plaintiff,

v.

UNKNOWN MCKAY, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Valiant Leon White, Jr.,

pursuant to 42 U.S.C. § 1983.  White asserted numerous claims against eleven

Defendants.  (ECF No. 1.)  The Court dismissed this case on initial review.  (ECF

Nos. 4 and 5.)  White appealed that decision and the Sixth Circuit issued an opinion

reversing the dismissal of the retaliation claim for his placement in segregation after

he threatened to file grievances against Defendants Goodell and Huhtala.  The Sixth

Circuit explained the remaining claims as follows:

> First, White's threat to file grievances against the defendants that were
> not obviously frivolous constituted protected conduct. *See Pasley v.
> Conerly*, 345 F. App'x 981, 984-85 (6th Cir. 2009).  The placement of
> White in segregation constitutes an adverse action. *See Hill v. Lappin*,
> 630 F.3d 468, 473-74 (6th Cir. 2010).  And there were enough facts stated
> to make a plausible claim that White's protected conduct was a
> motivating factor in the defendants' actions. *See Thomas v. Eby*, 481
> F.3d 434, 442 (6th Cir. 2007).  The fact that White was found guilty of
> the misconducts filed by the defendants does not absolutely bar his First

Amendment retaliation claim.  *See Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018).

(ECF No. 10, PageID.101.)

White alleges that Defendants Goodell and Huhtala retaliated against him after he threatened to file grievances when they gave him misconduct tickets and increased his security classification level.  Defendants Goodell and Huhtala have filed motions for summary judgment and White has replied.  (ECF Nos. 22, 25, 27, 28, and 30.)  Defendants argue that White failed to exhaust his administrative remedies. White has filed a separate motion for summary judgment and Defendants have replied.  (ECF Nos. 32, 34, and 35.)  The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court deny White's motion for summary judgment, and grant in part and deny in part the motion for summary judgment filed by Defendants Goodell and Huhtala.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one

---

[1]    Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury.  *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions

under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal

review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130 at ¶¶ T, BB.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ T, FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶¶ T, FF.  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130.  *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for

filing grievances at Step I.  *Id.*  Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140.  The prisoner will be promptly notified that an extension of time is needed to investigate the grievance.  *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct,

whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94.  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also

---

[2]  Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."  MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325.    We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## IV. Plaintiff's Allegations

Plaintiff's allegations are summarized in the table below.

| Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|
| Retaliatory false misconduct ticket for disobeying a direct order (ticket alleged that White failed to report to the Sergeant's office for a ticket review). | Goodell | May 31, 2014 |
| Retaliatory placement in segregation for threatening to file a grievance. | Goodell | May 31, 2014 |
| Retaliatory destruction of legal and personal property. | Goodell | May 31, 2014, and December 12, 2016 |
| Retaliatory statement that Plaintiff is a prison informant and then ordered Plaintiff "laid-in" (confined to his cell). | Huhtala | December 9, 2016 |
| Defendant ordered another officer to issue a retaliatory false misconduct ticket that resulted in further segregation. | Huhtala | December 12, 2016 |

---

[3]  In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596.  For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

## V.  Grievances Identified by Defendants

In their motion for summary judgment, Defendants Goodell and Huhtala identified a number of grievances that White filed with MDOC.  They claim that a review of these grievances will demonstrate that White has failed to exhaust his administrative remedies.  These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step I | Results at Step II | Results at Step III |
|---|---|---|---|---|---|---|
| KCF-14-06-0580-17i (ECF No. 23-4, PageID.190-195.) | Goodell and McKay | Retaliation for exercising 14th Amendment right not to participate in misconduct hearing. | May 31, 2014 | Unclear, possibly denied. | Unclear, it appears no response was given. | Decision upheld because response received at Step I reflects that issues were considered and responded to. |
| KCF-14-06-0615-11z (ECF No. 23-5, PageID.197-202.) | Grievance coordinator | Did not receive a grievance identifier for grievances filed against Goodell and McKay for retaliation that occurred on 5/31/14. | June 5, 2014 | Resolved. Grievance was processed with an assigned code number KCF-14-06-0580-17i. | Resolved. | Decision at Step II upheld. |
| KCF-14-06-0561-28c (ECF No. 23-6, PageID.204-214.) | Goodell, Sgt. P., Myers, and Bonnce | Forced to type grievance on floor and retaliated for exercising due process rights. | May 31, 2014 | Rejected for asserting multiple issues. | Rejected for asserting multiple issues. | Decision at Step II upheld. |
| KCF-14-05-0568-28a (ECF No. 23-7, PageID.216-222.) | Goodell | Took his property and requests his termination from employment and compensation | June 3, 2014 | Rejected as duplicative to issues presented in KCF-14-05-562-19a | Rejected as duplicative to issues presented in KCF-14-05-562-19a | Decision at Step II upheld. |

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step I | Results at Step II | Results at Step III |
|---|---|---|---|---|---|---|
| | | for stolen items. | | | | |
| KCF-14-06-0562-19a (ECF no. 23-8, PageID.224-229.) | Goodell | After receiving two misconduct tickets, Plaintiff was placed in segregation and his property was stolen in retaliation without documentation. | May 31, 2014 | Grievance has no merit. | Denied. | Decision at Step II upheld. |
| KCF-14-05-0579-27a (ECF No. 23-9, PageID.231-235.) | Theut, McKay, and Goodell | Conspiracy for violation of the law because he has right not to attend misconduct review process. | June 3, 2014 | Denied as not grievable because claim relates to misconduct hearing. | Denied as not grievable because claim relates to misconduct hearing. | Decision at Step II upheld. |
| KCF-14-05-0545-28e (ECF No. 23-10, PageID.237-41.) | Bonnee and Myers. | Ignored court deadlines denying him access to the courts and forced him to write or type on gym floor. | April 14, 2014- May 29, 2014. | Rejected for failing to file grievance timely. | Rejected for failing to file grievance timely. | Decision at Step II upheld. |

## VI. Misconduct Tickets

Defendants argue that White failed to exhaust his retaliatory misconduct claims because he failed to assert retaliation during misconduct hearings and he never appealed the misconduct decisions. These Misconduct Appeals are summarized below.

| Person(s) Named | Allegations | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Misconduct Appeal |
|---|---|---|---|---|---|

| Goodell (ECF No. 1-6, PageID.22-25; ECF No. 23-14, PageID.256-257.) | Disobeying a direct order to go the Sergeant's Office.  (class II) | May 31, 2014. | June 3, 2014 | Guilty, claimed that he did not want to go to the Sergeant's Office. | Rehearing request disapproved. (ECF No. 25-5, PageID.287.) No Appeal |
| Goodell (ECF No. 23-13, PageID.253-254.) | Out of place | May 31, 2014. | June 3, 2014 | Guilty, after pleading guilty. | No Appeal |
| Klingshirn (ECF No. 1-13, PageID.44-46.) | Disobeying a direct order "to go up front." (class II) | December 12, 2016. | December 19, 2016. | Guilty, did not want to speak with the Inspector due to appearance of being a snitch. | Rehearing request denied. (ECF No. 25-5, PageID.284-286.) No Appeal |

## VII. Additional Grievances Identified by White

In response, White identified additional grievances he filed with MDOC.  These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step I | Results at Step II | Results at Step III |
|---|---|---|---|---|---|---|
| KCF-16-12-1567-27z (ECF No. 25-3, PageID.276-277, ECF No. 1-11, PageID.35-38.) | Inspector. At Step II named Anderson, Mastaw, and Huhtala | Retaliatory action:  laid-in for asserting right to silence when inspector was trying to label him as an informer in front of other inmates. | December 9, 2016 | Rejected | Unknown, not in the record. | Rejection upheld |
| KCF-16-12-1567-17i (ECF No. 25-3, PageID.278-279; ECF No.12, PageID39-43.) | Anderson | Rejected grievance to cover-up Inspector's action. | December 12, 2016 | Denied | Rejected | Denied |
| KCF-1701-74-28E (ECF No. 1-10, | Goodell | Has a custom and | January 17, 2017 | Rejected | Rejected | Rejected |

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step I | Results at Step II | Results at Step III |
|---|---|---|---|---|---|---|
| PageID.30-34, ECF No. 25-6, PageID.289.) | | practice of confiscating and destroying property without making a record. | | | | |

## VIII. Analysis

Defendant Goodell argues that White failed to exhaust his administrative remedies against him regarding the retaliation claims asserted in the complaint. White alleges that on May 31, 2014, Defendant Goodell wrote him a misconduct ticket for being out of place and later that day told him to go to the Sergeant's office to review the misconduct ticket.  (ECF No. 1, PageID.5.)   White refused to see the Sergeant to review the ticket.  And when Defendant Goodell asked him why he did not go to the Sergeant's Office, White noted that if he chose not to go in person to review the ticket, the ticket would be mailed to him, and that he intended to file a grievance against Defendant Goodell for violating policy by forcing him to go for a ticket review. (*Id*.) As a result, Defendant Goodell ordered White to pack his property because he was "going to the hole.  You don't threaten me with a grievance." (*Id*., PageID.6.)   Defendant Goodell then gave White a disobeying a direct order misconduct ticket.  (*Id*., PageID.6-7.)  White alleges that Defendant Goodell also destroyed his personal property on May 31, 2014, and on December 12, 2016.  (*Id*., PageID.8.)

White filed six grievances naming Defendant Goodell that are arguably relevant to his complaint.  These grievances are: **KCF-14-06-0580-17i** (ECF No. 23-4, PageID.190-195), **KCF-14-05-0568-28a** (ECF No. 23-6, PageID.216-222), **KCF-14-06-0562-19a** (ECF No. 23-6, PageID.224-229), **KCF-14-05-0579-27a** (ECF No. 3-9, PageID.231-235), **KCF-14-06-561-28c** (ECF No. 23-6, PageID.204-206) and **KCF-1701-74-28E** (ECF No. 1-10, PageID.30-34).

A review of these grievances shows that a genuine issue of material fact remains with regard to the question of whether White exhausted his claims against Goodell.  White's Step I grievance in **KCF-14-06-0580-17i** asserted that Defendant Goodell placed him in segregation in retaliation for his refusal to be reviewed on the misconduct ticket that Goodell had previously issued.  This Step I grievance is shown below.



(ECF No. 23-4, PageID.193.)

In this grievance, unlike in White's complaint, White alleges that the adverse action was taken due to his previous grievance filing.  White also asserts that Defendant Goodell took adverse action because White exercised his right to not participate in the review process.  But, in his complaint, White alleges that the adverse action was taken due to his threat to file a grievance against Defendant Goodell.  Defendant Goodell argues that this is an important distinction that shows that White failed to allege in his grievance that the threat to file the grievance was the protected retaliatory conduct.  White clearly asserted in his grievance that Defendant Goodell took retaliatory action.  White explained that the retaliation was due to his refusal to attend the misconduct review process and due to his prior

grievance filing.   In the opinion of the undersigned, that was enough to place Defendant Goodell on notice that he was being grieved for alleged retaliatory conduct. In the opinion of the undersigned, whether the alleged retaliatory conduct was due to the threat to file a grievance, past grievances, or because Goodell was exercising a constitutional right, grievance **KCF-14-06-0580-17i** exhausted the claim that Goodell placed White in "the hole" in retaliation for protected conduct.

White also alleged that Goodell gave him a retaliatory disobeying-a-direct-order misconduct ticket for refusing to go to the Sergeant's office for the ticket review. In his Step I grievance in **KCF-14-05-0579-27a**, White asserted that Goodell retaliated and violated his due process rights by ordering him to participate in the misconduct review process in violation of administrative rules and Michigan law. (ECF No. 23-9, PageID.234.)   The grievance was rejected at each step as non-grievable because it concerned the hearing process.  (Id., PageID.231, 233, 235.)   In the opinion of the undersigned, this grievance did not raise any new relevant issues and could not have exhausted White's retaliatory misconduct ticket claim.

Similarly, White failed to exhaust this issue in grievance **KCF 14-06-561-28c**, because that grievance was rejected for improperly raising multiple issues. (ECF No. 23-6, PageID.204-206.)   As noted above, to exhaust his retaliatory misconduct claim, White needed to raise the retaliation claim during his misconduct hearing, and, if he was found guilty, appeal the findings by specifically raising the retaliation issue.   A review of the misconduct report, shown below, indicates that White failed to assert that Defendant Goodell issued the misconduct ticket in retaliation.

16

| EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT |
| --- |
| Prisoner is  present for the hearing and the  misconduct report is reviewed with a  refusal 1 page and  a screening form 1 page.   Prisoner states he is  not guilty and did not want to participate in a ticket review and af first he asked me and then gave me a direct order and  declines further statement.     No further evidence is requested or is necessary. Prisoner is informed of the sanction and the decision and told that a copy of the hearing report wouold be delivered to him. |



| REASONS FOR FINDINGS |
| --- |
| Pursuant to PD  03.03.105 B  Disobeying A Direct Order:  Refusal or failure to follow a valid and reasonable order of an employee.    Prisoner White was given a direct and reasonable order on 5-31-14 at 2030 hrs by the reporting officer to go to the Sgt's Office.    Prisoner White heard and understood the order because he looked directly at the reporting officr and kept walking away.    Prisoner White  voluntarily failed to follow the order and did not go to the Sgt's office. Prisoner White admits that he was given the order and did not go and it is no defense to the charge that he did not want to go.     Pursuant to the hearings handbook the order is not unreasonable because pursuant to the hearings hand book compliance with the order would not create a risk serious injury to the prisoners physical well being, he is physically able to comply and the order did not interfere with a previous order given to the prisoner.    The reporting staff member is clear and detailed   in his statements and found credible.  The charge is upheld. |

(ECF No. 23-14, PageID.256.)[4]  In the opinion of the undersigned, White failed to exhaust his retaliatory misconduct ticket claim against Defendant Goodell by asserting retaliation during his misconduct hearing.

In grievance **KCF-14-06-0562-19a**, White exhausted the issue that Defendant Goodell retaliated against him by taking and/or destroying his property on May 31, 2014.  White explained at Step I:

---

[4]    White first raised the retaliation issue in his request for a rehearing.  (ECF No. 25-5, PageID.286-287.)

Case 2:17-cv-00099-RJJ-MV   ECF No. 37, PageID.435   Filed 10/27/20   Page 18 of 22

(ECF No. 23-8, PageID.227.)

In the opinion of the undersigned, a genuine issue of fact remains regarding
whether White exhausted his May 31, 2014, retaliatory destruction-of-property claim
against Defendant Goodell.[5]   White asserted in grievance **KCF-1701-74-28E** that
Defendant Goodell has a custom and practice of taking legitimate property without
documenting the property that he confiscates.  (ECF No. 1-10, PageID.30.)  White
asserted that Goodell did this again on January 17, 2017.  Unfortunately for White,
this grievance does not exhaust the alleged December 12, 2016, retaliatory taking-of-
property by Defendant Goodell.  In the opinion of the undersigned, White failed to
exhaust the alleged December 12, 2016, retaliatory taking-of-property claim against
Defendant Goodell.

Defendant Huhtala argues that White failed to exhaust his administrative
grievances against him.  White alleges that, on December 9, 2016, Defendant Huhtala
placed his life in danger by implying that he was an informant when he asked to

---

[5]   Grievance **KCF 14-05-568-28a** was rejected for asserting the same issues
asserted in grievance **KCF 14-06-562-19a**.

speak with White "in the back" while he was working in food service.  (ECF No. 1, PageID.9.)  White filed one grievance that is arguably related to this complaint naming Defendant Huhtala: **KCF-16-12-1567-27z**.  (ECF No. 25-3, PageID.276-277, ECF No. 1-11, PageID.35-38.)  However, that grievance was not properly filed and the rejection was upheld at Step III.  The Step I response for this grievance is shown below.

**SUBJECT**:    Receipt/Rejection for Step I grievance.

Your Step I grievance is rejected,    Per inspector Huhtala grievant was laid in with pay till his investigation is complete.
Any future references to this grievance should utilize this identifier:  KCF1612/1567/27Z

(ECF No. 1-11, PageID.36.)  The rejection was upheld at Step III.  (*Id.*, PageID.37.)

Finally, White did not assert, during his misconduct ticket hearing on December 19, 2016, that Defendant Huhtala had another officer – Klingshim – issue White a retaliatory misconduct hearing.  That hearing report is attached, in part, below.

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Unless otherwise noted all documents are one page.  The prisoner is present and the misconduct report is reviewed along with his statement that he does not want to make a statement.  Prisoner White submits a one page statement and states that the Inspector tried to talk to him a few days before and he refused and he did not want to speal to him then or now because if the prisoners see him talking to the Inspector they will assume he is a snitch so complying would put him at risk.  When asked he states that no one has threatened him but they could if he talks to the Inspectors.  Prisoner has nothing further to add.  No further evidence is requested or is needed.  Prisoner is informed of the findings, sanctions and sanction dates and told that he will receive the report later.

**REASONS FOR FINDINGS**

Officer Klingshirn gave a direct and reasonable order to Prisoner White to go up front on 12-12-16 at 1400 hrs.  Prisoner White admits he heard and understood the order and did not comply.  The order was capable of being performed, did not pose a significant risk of substantial harm and did not conflict with a prior order.  It is not a defense that if he went up front then others would think he was snitching and then would want to harm him.  His assumption that someone may think he was a snich or his desire not to talk to the Inspector is not proof of any risk of substantial harm and he can choose to say nothing but still has to go up front when told to do so.  If he feels being told to go up front is a violation of policy or the Inspectors trying to talk to him is then he can grieve but he has to comply.  The Officer is clear and factual in his statement and is found to be credible.  The charge is upheld.

(ECF No. 25-6, PageID.289.)  In the opinion of the undersigned, because White failed to properly raise these issues in a grievance or during a misconduct hearing, White failed to exhaust his claims against Defendant Huhtala.

White argues that he is entitled to summary judgment.  However, in the opinion of the undersigned, White's motion falls far short of establishing the absence of a genuine issue of material fact on the merits of his remaining claims against Defendants.  White asserts that the evidence is undisputed that Defendants engaged in retaliatory acts.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

White can show, for the purposes of summary judgment, that he engaged in protected conduct.  But, at this stage of the proceedings, White has failed to show that there exists no genuine issue of fact as to whether Defendant Goodell took adverse action against him due to his protected conduct.  In the opinion of the

undersigned, White is not entitled to summary judgment on his retaliation claims as genuine issues of fact exist.

## IX. Recommendation

It is respectfully recommended that the Court deny White's motion for summary judgment (ECF No. 32) and grant in part and deny in part Defendant Goodell and Huhtala's motion for summary judgment (ECF No. 22).

The undersigned respectfully recommends that this Court dismiss the following claims:

1.    White's claim that Defendant Goodell retaliated against him by issuing a false misconduct disobeying a direct order ticket on May 31, 2014;

2.    White's claim that Defendant Goodell retaliated against him by confiscating or destroying property on December 1, 2016; and

3.    White's claims against Defendant Huhtala.

If the Court adopts this recommendation, the following claims will remain:

1.    White's claim that Defendant Goodell retaliated against him by placing him in segregation on May 31, 2014; and

2.    White's claim that Defendant Goodell confiscated or destroyed his property in retaliation on May 31, 2014.


Dated:   October 27, 2020                                  /s/ *Maarten Vermaat*
                                                          MAARTEN VERMAAT
                                                          U. S. MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).