UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VALIANT LEON WHITE #225440, JR.,                Case No. 2:17-cv-00099

      Plaintiff,                                    Hon. Gordon J. Quist
                                         U.S. District Judge

     v.

UNKNOWN MCKAY,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses Plaintiff's motion for summary judgment (ECF No. 73), Defendants' motion for summary judgment (ECF No. 75), Plaintiff's motions to add exhibits to his motion for summary judgment (ECF No. 84), and Plaintiff's motion to reopen discovery (ECF No. 87).

The Plaintiff in this case – state prisoner Valiant Leon White – filed this civil rights action pursuant to 42 U.S.C. § 1983 on June 1, 2017.   He alleges in his verified complaint that his rights were violated while he was confined at the Kinross Correctional Facility (KCF).   (ECF No. 1.)

White asserted numerous claims against eleven Defendants. (ECF No. 1.) The Court dismissed this case on initial review. (ECF Nos. 4 and 5.)   White appealed that decision, and, on June 27, 2019, the Sixth Circuit issued an opinion reversing the dismissal of the retaliation claims involving conduct which occurred after he

threatened to file grievances against Defendants Goodell and Huhtala.   The Sixth

Circuit explained the remaining claims as follows:

> First, White's threat to file grievances against the defendants that were
> not obviously frivolous constituted protected conduct.   *See Pasley v.
> Conerly*, 345 F. App'x 981, 984-85 (6th Cir. 2009).   The placement of
> White in segregation constitutes an adverse action.   *See Hill v. Lappin*,
> 630 F.3d 468, 473-74 (6th Cir. 2010).   And there were enough facts
> stated to make a plausible claim that White's protected conduct was a
> motivating factor in the defendants' actions.   *See Thomas v. Eby*, 481
> F.3d 434, 442 (6th Cir. 2007).   The fact that White was found guilty of
> the misconducts filed by the defendants does not absolutely bar his First
> Amendment retaliation claim.   *See Maben v. Thelen*, 887 F.3d 252, 262
> (6th Cir. 2018).

(ECF No. 10, PageID.101.)   White alleges that Defendants Goodell and Huhtala

retaliated against him after he threatened to file grievances when they gave him

misconduct tickets and increased his security classification level.

On March 26, 2021, this Court determined that the following five claims

remain in this case:

> 1. Defendant Goodell retaliated against Plaintiff by issuing him a false
> misconduct for disobeying a direct order on May 31, 2014;
>
> 2. Defendant Goodell retaliated against Plaintiff by placing him in
> segregation on May 31, 2014;
>
> 3. Defendant Goodell retaliated against Plaintiff by confiscating and
> destroying his property on May 31, 2014;
>
> 4. Defendant Huhtala retaliated against Plaintiff by implying that
> Plaintiff was a prison informant on December 9, 2016; and
>
> 5. Defendant Huhtala retaliated against Plaintiff by ordering another
> officer to issue Plaintiff a false misconduct on December 12, 2016.

(ECF No. 46, PageID.534-535 (Order Regarding Report and Recommendation).)[1]

White received two Class I misconduct tickets for disobeying a direct order. (Claims 1 and 5.)  White was found guilty of both misconducts after hearings where he raised the same issues that he raises in this case.  White did not successfully appeal the Class I misconduct guilty findings in the Michigan state courts before asserting his retaliation claims in this Court.  The hearing findings have preclusive effect in this action and any claims arising out of the matters addressed during the hearings fail as a matter of law.  (Claims 1, 2, and 5.)

Finally, White presents no evidence to support his claims that Defendant CO Goodell retaliated against him by confiscating White's property or that Inspector Huhtala retaliated against him by trying to speak with White regarding an investigation into White's relationship with a civilian food service worker.  White asserts only in conclusory fashion that all of Defendants' evidence is false and fabricated.  White presents no admissible evidence that can support his claims.

It is respectfully recommended that the Court grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of*

---

[1]    White was transferred from KCF to Chippewa Correctional Facility on December 13, 2016, due to his December 12, 2016, misconduct ticket for disobeying a direct order and "for refusing to lock at KCF."   (ECF No. 76-6, PageID.858.)

*Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).    The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."    *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).    The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.    *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## III.   Retaliation

Each of White's remaining claims against Defendants CO Goodell and Inspector Huhtala are based on alleged retaliatory conduct.    Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).    In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.    *Id.*

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032,

1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has also employed a burden-shifting approach with respect to the causation element:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

## A.  Claim 1

White alleges that CO Goodell issued him a false retaliatory misconduct ticket for disobeying a direct order on May 31, 2014.  Although CO Goodell issued the misconduct ticket for disobeying a direct order, he did not elevate the misconduct to a Class I misconduct or place White in administrative segregation.   Sergeant (Sgt.) McKay reviewed the misconduct and elevated it to a Class I misconduct and transferred White to administrative segregation because he was unmanageable in the general population.   The relevant portion of the misconduct ticket showing Sgt. McKay's review and elevation to a class I misconduct ticket is below:

| REVIEW | | |
|---|---|---|
| Location/Verification/Condition of Evidence: | | |
| Elevated to Class I at review: ☐ No ☒ Yes | If "yes", explain reason: | |

| COMPLETE THIS SECTION ONLY FOR REVIEW OF CLASS I MISCONDUCT | | |
|---|---|---|
| Status Pending Hearing: ☐ Bond ☒ Segregation ☐ Confinement to Cell/Room ☐ Other | | |
| Reason if Non-Bond: ☐ Non-Bond List ☒ Bond Revoked (must give reason) *Un Mangeable in C.S.* | | |
| Date and Time Given this Status: | Who Notified in Housing Unit of Status: | |
| Hearing Investigator Requested? ☐ No ☒ Yes | Witnesses Requested? ☐ No ☒ Yes If yes, list: | |
| Relevant Documents Requested? ☐ No ☒ Yes If yes, list: | | |
| Additional Comments: | Prisoner Waives 24 Hour Notice of Hearing? ☒ No ☐ Yes Hearing Date: *6-1-14* | |
| Reviewing Officer's Name (Print ) *G. McKay* | Reviewing Officer's Signature *Sgt M Kay* | Review Date and Time *5-31-14 2212* |
| I have received a copy of this report. My signature does not necessarily mean that I agree with the report. ☒ Prisoner refused to sign. Copy given to prisoner. | Prisoner's Signature | Date |

(ECF No. 23-14, PageID.257.)

White was found guilty of the Class I misconduct ticket after a hearing.   White admitted that he disobeyed the direct order and presented his retaliation claim as his defense, which was rejected by the hearing officer.   The Class I hearing report is shown below.

CLASS I MISCONDUCT HEARING REPORT

Rev. 10/10

| Prisoner 225440 | Prisoner Name White | | Facility Code KCF | Lock G-2-47 | Violation Date 05/31/2014 |
|---|---|---|---|---|---|

Charge(s)
**Disobeying A Direct Order**

| If Charge Changed by Hearing Officer | Plea ☐ Guilty   ☒ Not Guilty |
|---|---|

| Misconduct Report Read to and Discussed with Prisoner    ☒ (check if applies)<br>Hearing Investigation Read to and Discussed with Prisoner    ☒ (check if applies) | No Hearing Investigation Requested<br>☐ (check if applies) |
|---|---|

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Prisoner is present for the hearing and the misconduct report is reviewed with a refusal 1 page and a screening form 1 page. Prisoner states he is not guilty and did not want to participate in a ticket review and af first he asked me and then gave me a direct order and declines further statement. No further evidence is requested or is necessary. Prisoner is informed of the sanction and the decision and told that a copy of the hearing report wouold be delivered to him.

ENTERED

**REASONS FOR FINDINGS**

Pursuant to PD 03.03.105 B Disobeying A Direct Order: Refusal or failure to follow a valid and reasonable order of an employee. Prisoner White was given a direct and reasonable order on 5-31-14 at 2030 hrs by the reporting officer to go to the Sgt's Office. Prisoner White heard and understood the order because he looked directly at the reporting officr and kept walking away. Prisoner White voluntarily failed to follow the order and did not go to the Sgt's office. Prisoner White admits that he was given the order and did not go and it is no defense to the charge that he did not want to go. Pursuant to the hearings handbook the order is not unreasonable because pursuant to the hearings hand book compliance with the order would not create a risk serious injury to the prisoners physical well being, he is physically able to comply and the order did not interfere with a previous order given to the prisoner. The reporting staff member is clear and detailed in his statements and found credible. The charge is upheld.

(ECF No. 23-14, PageID.256.)

Defendant argues that the findings of the hearing officer are preclusive and White cannot assert claims based upon issues decided at the Class I hearing in this lawsuit. The Sixth Circuit test for determining whether factual findings made within a Class I misconduct hearing are entitled to preclusive effect was established in *Peterson v. Johnson*, 714 F.3d 905, 912 (6th Cir. 2013) (citing *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986)). Pursuant to *Peterson*, facts found during a Michigan prison hearing are given preclusive effect when (1) the state agency, in this case the Hearing Officer on behalf of the agency, was acting in a

7

"judicial capacity," (2) the hearing officer resolved the disputed issue of fact that was properly before him or her, (3) the prisoner had a sufficient opportunity to litigate the issue, and (4) the findings of fact would be given preclusive effect by the Michigan courts. *Maben v. Thelen*, 887 F.3d 252, 259 (6th Cir. 2018), *citing Peterson*, at 911-13 (rejecting the checkmate doctrine but upholding the preclusive effect of major misconduct hearing findings when appropriate factors are met). The Sixth Circuit in *Peterson* determined that a major misconduct hearing (*i.e.*, a Class I Misconduct Hearing) satisfies the first and last criteria as long as the other two criteria are satisfied. *Peterson*, at 912-14; *See also Mays v. Perala*, 2:17-cv-95 (W.D. Mich., Sept. 23, 2019) (Order adopting Report and Recommendation dismissing class I misconduct retaliation claim based upon preclusive effect of hearing officer's decision).

The hearing report indicates that the hearing officer acted in a judicial capacity by considering evidence entered into the record by White and Defendant Goodell, holding a formal hearing in which the parties were permitted to argue their accounts of the incident, and "issu[ing] a written final decision that . . . could have been subject to direct review in state court." *Peterson*, at 912. Because the hearing was for a Class I misconduct, White was provided with the same "raft of judicial-type protections," as was the prisoner in *Peterson*, including, but not limited to, a hearing without undue delay, reasonable notice, and a right to appeal. *Id*. at 912-913.

Second, the disputed issue of fact — whether White in fact violated a direct order or was retaliated against — was the core inquiry of the misconduct hearing, thus fulfilling the second element necessary for preclusive effect. *Id*. at 913. White

admitted to violating CO Goodell's order by arguing that he did not want to go to the Sergeant's office as ordered.    As this Court has previously determined based upon White's own verified statement, White asserted the issue of retaliation during his misconduct proceeding.    (ECF No. 46, PageID.532 (Order Regarding Report and Recommendation) citing (ECF No. 25 at PageID.266); *see also*, PageID.264 (White attesting that he "advised Hearings Officer Theut 048 that Def. Goodell and Sgt. McKay retaliated . . . .").)    The Hearing Officer determined that the reporting staff member – CO Goodell – was "clear and detailed in his statements and found credible." (ECF No. 23-14, PageID.256.)    Thus, White's retaliation defense was rejected by the hearing officer.[2]

Third, as shown above, White had a sufficient opportunity to litigate the dispute during the misconduct hearing.    White appealed the guilty finding by filing

---

[2]    The undersigned concludes that the Hearing Officer *necessarily* addressed White's retaliation claim.    Under the Prison Litigation Reform Act ("PLRA"), a prisoner cannot bring an action challenging his prison conditions unless he exhausts administrative remedies.    42 USC § 1997e(a).    Generally, inmates must exhaust through their prison's comprehensive grievance process.    The prison's process determines when and if a prisoner has properly exhausted his claim.    *Jones v. Bock*, 549 U.S. 199, 218 (2007).    But, when a prisoner asserts that a misconduct ticket was issued in retaliation for protected conduct, the prisoner must raise the retaliation defense in his misconduct hearing in order to exhaust his retaliation claim.    *Siggers v. Campbell*, 652 F.3d 681, 693-694 (6th Cir. 2011).

As noted above, the Court has already concluded that White raised his retaliation claims before the Hearing Officer.    Although the Hearing Officer did not discuss this retaliation claim in the hearing report, the Hearing Officer concluded that the Corrections Officer was "clear and detailed in his statements and found credible."    (ECF No. 23-14, PageID.256.)    The undersigned would have preferred a more detailed explanation.    Nevertheless, in the view of the undersigned, this conclusion disposed of White's retaliation claim.

a request for a rehearing, raising the issue of retaliation in his appeal.    (ECF No. 25-5, PageID.287.)    The request was rejected.    (*Id.*, PageID.286.)

Finally, as in *Peterson*, findings that result from such a hearing would be given preclusive effect by the Michigan courts.    *Id.* at 917; *see also Maben at* 259 (applying the *Peterson* test in finding that a *minor* misconduct hearing does not have preclusive effect on later § 1983 litigation, as distinguished from a *major* misconduct hearing that can have preclusive effect).    Thus, the undersigned concludes that the Hearing Officer's factual findings should be entitled to preclusive effect and White's claim that he was issued a retaliatory Class I misconduct ticket for disobeying a direct order (claim 1) should be dismissed.

### B.  Claim 2

White says that CO Goodell sent him to administrative segregation in retaliation for his threat to file a grievance.    To impose liability under 42 U.S.C. § 1983, a plaintiff must show that a defendant is personally involved in the conduct that is alleged in the complaint.    *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). As explained above, CO Goodell did not send White to segregation.    (ECF No. 77-1, PageID.863 (affidavit of CO Goodell explaining that he did not have the authority to send White to segregation).)    Sgt. McKay attempted to review Goodell's disobeying a direct order ticket with White on May 31, 2014.    (ECF No. 23-14, PageID.257.) And, as shown above, McKay moved White to segregation because he believed that White was not manageable in general population.    (*Id.*)

White admits in his complaint that Sgt. McKay elevated the Class II misconduct ticket to Class I and placed him in segregation.   (ECF No. 1, PageID.7.) But White says that Goodell conspired with Sgt. McKay to elevate the misconduct ticket to Class I and to place White in segregation.   (*Id.*)   That portion of White's complaint, Paragraph 9, is shown below.

```
    9. Defendant Sgt. McKay conspired with C/O Goodell as his reasons for placing
me in segregation were not explicit or specific, were "CONCLUSORY" as it is not
the normal practice of MDOC employees to elevate a simple Disobeying a Direct
Order Misconduct (Class II) to a (Class I) Misconduct, where MDOC's policy &
procedure specifically states a prisoner can opt not to participate in the review
process.
```

(*Id.*)

In the opinion of the undersigned, this speculative statement is insufficient to link McKay and Goodell in a conspiracy.   White's conclusory conspiracy claim is unsupported by any fact.

As explained above, the hearing officer found White guilty of the Class I misconduct after considering White's retaliation argument.   (ECF No. 46, PageID.532 and ECF No. 25 at PageID.264, 266.)   White's request for a rehearing where he addressed his retaliation claim was denied.   (ECF No. 25-5, PageID.284, 287, 286.)   As explained in the discussion of Claim 1, White's assertion that the misconduct ticket and the punishment that flowed from the guilty finding were retaliatory necessarily fails.   In the opinion of the undersigned, White's claim that CO Goodell retaliated against him by placing him in segregation (Claim 2) should be dismissed.

### C.   Claim 3

As a result of White's transfer to administrative segregation, CO Goodell packed White's property.  (ECF No. 77-1, PageID.863.)   White alleges that CO Goodell retaliated against him by confiscating property.   (ECF No. 1, PageID.8.) Goodell says that he filed grievances and produced receipts to get his property back. (*Id.*)   White alleges that CO Goodell is known for "years of unlawful practice, pattern, and custom of pilfer[ing] prisoner[s'] property [outside] their presence." (*Id.*, PageID.9.)

CO Goodell says that he packed White's property and filled out a CSJ-241-A form (Prisoner Personal Property Receipt).   (ECF No. 23-8, PageID.228-229.) Contrary to White's unsupported retaliation claim, White's complaint says that it is CO Goodell's pattern and practice to take property from prisoners (ECF No. 1, PageID.8) and White's grievance asserted that CO "Goodell regularly takes property from prisoners" (ECF No. 23-8, PageID.227).   Accepting White's allegations as true, White says that CO Goodell regularly takes property from prisoners and has a pattern and practice to take property from all prisoners.   This is much different from alleging that CO Goodell took property in retaliation for alleged protected conduct. White alleges that it is CO Goodell's practice to take property from all prisoners as a matter of course and he continued that pattern with White.   White submitted affidavits from prisoners that state the same thing:   that CO Goodell has a pattern and practice of taking property from prisoners.   (ECF No. 80-2 (Affidavit of Iman); ECF No. 80-2 (Affidavit of Donald Beebe).)   White has failed to show that CO Goodell

took retaliatory action against him. At best when construing the allegations most favorable to White, White has asserted that CO Goodell, without any retaliatory motive, has a custom and practice of taking property from all prisoners.

Finally, White's conclusory assertion that CO Goodell retaliated against him by taking his property is not enough to establish a genuine issue of material fact. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009.) White cannot defeat summary judgment by pointing to a "bare possibility that a jury might *disbelieve* [Defendant's] testimony; [he] must present proof of [his] own that creates a 'genuine dispute as to any material fact.'" *Witham v. Intown Suites Louisville Northeast, LLC*, 815 F.3d 260, 265 (6th Cir. 2016). It never enough to simply assert that an issue of credibility creates a genuine issue of fact and that a jury should be permitted to draw its own conclusions. *Id.*, at 264.

### D. Claim 4

White says that on December 9, 2016, Inspector Huhtala retaliated against him by implying that White was a prison informant while White was working in the kitchen. (ECF No. 1, PageID.9.) White's specific allegation is shown below.

> 18. On December 9, 2016, at 10:00 a.m. while on assignment in Food Service, Defendant Huhtala, Kinross Correctional Facility Inspector, placed Plaintiffs life in danger by implying Plaintiff is a prison informant, approached Plaitiff telling him to come speak with him in the back, where others could not hear. Plaintiff immediately told Defendant Huhtala, "there is nothing to talk about that could not be discussed out in the dining room in the presence of my Trinity Supervisors and other prisoner Food Service Workers,

(*Id.*[3])

---

[3] White's complaint goes on to assert that he was "laid-in" by Huhtala for threatening to file a grievance. As noted in the Court's order dated March 26, 2021,

White has presented no facts that could show that Inspector Huhtala "implied" that White was a prison informant.  Inspector Huhtala was tasked with investigating White concerning illicit activities with a civilian food service employee. (ECF No. 76-3 (Affidavit of Inspector Huhtala).)  Other employees noticed that the civilian food service worker was spending a lot of time around inmate White and there were rumors that the food service worker was "having relations" with White.  (*Id.*, PageID.819, 821.)

Inspector Huhtala and Captain Bigger noticed during rounds on December 9, 2016, that White was not where he was supposed to be and, when questioned, White became immediately "agitated."  (*Id.*, PageID.817.)  The officers attempted to separate White from other prisoners to speak with him, but White refused.  (*Id.*) Inspector Huhtala instructed another officer to remove White "from the kitchen and that White be laid in with pay while the investigation was ongoing." (*Id.*)  White does not dispute these facts.  White argues and alleges in his complaint that by asking to speak with him, Inspector Huhtala was "implying" that he was a prison informant and, after White refused to speak, Inspector Huhtala retaliated against him when he laid him in.  (ECF No. 1, PageID.9.)

White says that he engaged in protected conduct by refusing to speak with Inspector Huhtala.  Certainly, White could refuse to speak with Inspector Huhtala but that does not mean no consequences would flow from his refusal to cooperate with Inspector Huhtala's investigation.

_____

this claim is no longer part of the case.   (ECF No. 46, PageID.535.)

First, White cannot show that he engaged in protected conduct before Inspector Huhtala's questioned him – which White argues implied that he was an informant. Inspector Huhtala simply attempted to speak with White before White refused to speak with him.   The undersigned does not agree that the act of simply speaking with an inmate as part of investigation into illicit activities implies that the inmate is an informant.   This claim is entirely speculative.

White has made the assertion that being laid-in was a retaliatory act.   White's complaint, however, fails to disclose that he was laid-in with pay while the investigation was pending.   In the opinion of the undersigned, White has failed to show that being laid-in with pay is adverse action.

Finally, White has failed to show that Inspector Huhtala took any retaliatory action against White by investigating White's involvement with a civilian food worker or for being out of place.   In the opinion of the undersigned, White's claim that Inspector Huhtala retaliated against him on December 9, 2016, while his investigation was pending, is not sufficient to create a genuine issue of material fact.

### E.   Claim 5

White alleges that Inspector Huhtala retaliated against him when he ordered another officer to issue a disobeying a direct order misconduct ticket on December 12, 2016.   Inspector Huhtala states that he did "specifically instruct CO Klingshirm to write a Disobeying a Direct Order Misconduct on White.   However, I do agree that CO Klingshirm took the proper action after White disobeyed the direct order."   (ECF No. 76-3, PageID.817-818.)

On December 12, 2016, Inspector Huhtala contacted White's housing unit and requested that White receive instructions to report to the KCF control center.    (*Id.*, PageID.817.)    Inspector Huhtala wanted to speak with White about his investigation.    (*Id.*, PageID.818.)    White refused to report to the control center. (*Id.*, PageID.817.)

CO Klingshim issued White a disobeying a direct order misconduct ticket on December 12, 2016, and Sgt. Johnson elevated the misconduct ticket from a Class II misconduct to a Class I misconduct.    A copy of the relevant portion of the misconduct ticket is below:

| Time and Place of Violation:<br>1400   D-2-17 | Contraband Removal Record Provided to Prisoner?<br>☐ Yes    Date _____ 00:00    ☒ N/A |
|---|---|

Misconduct Class:  ☐ I   ☒ II   ☐ III        Charge(s): Disobeying a Direct Order

Describe Violation  (If contraband involved, describe in detail; identify any other employee witnesses):

At 1400 I told White 225440 he had to go up front.  He stated "That's just not going to happen, talk to your snitches".  Prisoner made no attempt to follow my valid order.  I.D.ed by MDOC I.D. Card.

| Reporting Staff Member's Name (Print)<br>R. Klingshirn | Reporting Staff Member's Signature<br>*Klingshirn 098* | Date and Time Written<br>12-12-16  1415 |
|---|---|---|

REVIEW

Location/Verification/Condition of Evidence:

Elevated to Class I at review:   ☐ No  ☒ Yes      If "yes", explain reason:  UNMANAGABIE

COMPLETE THIS SECTION ONLY FOR REVIEW OF CLASS I MISCONDUCT

| Status Pending Hearing:   ☒ Bond        ☐ Segregation    ☐ Confinement to Cell/Room    ☒ Other *THL*<br>Reason if Non-Bond:    ☐ Non-Bond List   ☒ Bond Revoked (must give reason)  UNMANAGABIE | |
|---|---|
| Date and Time Given this  Status: | Who Notified in Housing Unit of  Status: |
| Hearing Investigator Requested?  ☒ No   ☐ Yes | Witnesses Requested?   ☒ No   ☐ Yes<br>If yes, list: |
| Relevant Documents Requested?  ☒ No   ☐ Yes<br>If yes, list: | |
| Additional Comments: | Prisoner Waives 24 Hour Notice of Hearing?   ☐ No   ☒ Yes<br>Hearing Date:  12-15-16 |
| Reviewing Officer's Name (Print )<br>SGT JOHNSON | Reviewing Officer's Signature<br>SGT Johnson | Review Date and Time<br>12-12-16  1445 |

I have received a copy of this report. My signature does not        Prisoner's Signature                    Date

(ECF No. 1, PageID.44.)

White was found guilty of the Class I misconduct after a hearing:

17

MICHIGAN DEPARTMENT OF CORRECTIONS                                            CSJ-240B
**CLASS I MISCONDUCT HEARING REPORT** ~Exhibit #13~  HI McCollum      Rev. 10/10

| Prisoner # | Prisoner Name | Facility Code | Lock | Violation Date |
|---|---|---|---|---|
| 225440 | White | URF | M 312 | 12/12/2016 |

**Charge(s):**
Disobeying a Direct Order

| If Charge Changed by Hearing Officer | Plea |
|---|---|
| | ☐ Guilty   ☒ Not Guilty |

| Misconduct Report Read to and Discussed with Prisoner | ☒ (check if applies) | No Hearing Investigation Requested |
|---|---|---|
| Hearing Investigation Read to and Discussed with Prisoner | ☐ (check if applies) | ☒ (check if applies) |

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Unless otherwise noted all documents are one page.  The prisoner is present and the misconduct report is reviewed along with his statement that he does not want to make a statement.  Prisoner White submits a one page statement and states that the Inspector tried to talk to him a few days before and he refused and he did not want to speak to him then or now because if the prisoners see him talking to the Inspector they will assume he is a snitch so complying would put him at risk.  When asked he states that no one has threatened him but they could if he talks to the Inspectors.  Prisoner has nothing further to add.  No further evidence is requested or is needed.  Prisoner is informed of the findings, sanctions and sanction dates and told that he will receive the report later.

**REASONS FOR FINDINGS**

Officer Klingshirn gave a direct and reasonable order to Prisoner White to go up front on 12-12-16 at 1400 hrs.  Prisoner White admits he heard and understood the order and did not comply.  The order was capable of being performed, did not pose a significant risk of substantial harm and did not conflict with a prior order.  It is not a defense that if he went up front then others would think he was snitching and then would want to harm him.  His assumption that someone may think he was a snich or his desire not to talk to the Inspector is not proof of any risk of substantial harm and he can choose to say nothing but still has to go up front when told to do so.  If he feels being told to go up front is a violation of policy or the Inspectors trying to talk to him is then he can grieve but he has to comply.  The Officer is clear and factual in his statement and is found to be credible.  The charge is upheld.

(ECF No. 1-14, PageID.45.)

As addressed above in Claim 1, the findings of the hearing officer are preclusive and White cannot assert claims based upon issues decided at the Class I hearing in this lawsuit.[4]  *Peterson*, 714 F.3d at 912.  As explained above, this Court has previously determined, based upon White's own verified statement, that White asserted the issue of retaliation during his misconduct proceeding.  (ECF No. 46, PageID.532 (Order Regarding Report and Recommendation) citing (ECF No. 25 at

---

[4]    Defendant also correctly points out that White was not engaged in protected conduct by refusing a direct order, because violating a prison regulation is not protected conduct.  *Lockett v. Saurdini*, 526 F.3d 866, 874 (6th Cir. 2008).

PageID.266) *See also*, PageID.265 (White attests that he raised his retaliation claim during his misconduct hearing).)

The hearing report indicates that the Hearing Officer acted in a judicial capacity by considering evidence entered into the record by White, holding a formal hearing in which the parties were permitted to argue their accounts of the incident, and "issu[ing] a written final decision that . . . could have been subject to direct review in state court."  *Id*. at 912-913.

Second, the disputed issue of fact — whether White in fact violated a direct order or was retaliated against — was the core inquiry of the misconduct hearing, thus fulfilling the second element necessary for preclusive effect.  *Id*. at 913.  White admitted to violating CO Klingshirn's order but explained that he did not want to go to the control center to speak with Inspector Huhtala.  White's retaliation defense was presented to the Hearing Officer and was rejected.  (*See*, *supra*, n.2.)  The hearing officer found CO Klingshirn was "clear and factual in his statement and [was] found to be credible."  (ECF No. 1-14, PageID.45.)

Third, as shown above, White had a sufficient opportunity to litigate the dispute during the misconduct hearing.  White appealed the guilty finding by filing a request for a rehearing, raising the issue of retaliation in his appeal.  (ECF No. 25-5, PageID.284-285.)  White has not established that he successfully overturned the misconduct finding prior to filing this lawsuit.  Finally, as in *Peterson*, findings that result from such a hearing would be given preclusive effect by the Michigan courts. Thus, the undersigned concludes that the Hearing Officer's factual findings should

be entitled to preclusive effect and White's claim that he was issued a retaliatory Class I misconduct ticket for disobeying a direct order (claim 5) should be dismissed.

## IV.   Official Capacity Claim

If the Court decides to allow one or more of White's claims to go forward, the Court should dismiss White's claims against Defendants in their official capacities.

To the extent that White seeks damages in Defendants' official capacity, his claims are barred by the Eleventh Amendment.   The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials.   *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989).   To the extent that Whites seeks money damages, costs, and fees from Defendants in their official capacity, that part of his lawsuit is barred by sovereign immunity.[5]

---

[5]    "There are three exceptions to a State's sovereign immunity: (a) when the State

## V.   White's Motion to Add Exhibits and to Reopen Discovery

White moves to add an exhibit to his motion for summary judgment.   (ECF No. 84.)   The exhibit is a purported statement from prisoner Kelly.   It is recommended that the Court grant White's motion and include the statement as an exhibit to White's summary judgment.

White moves to reopen discovery so that he can obtain additional evidence. (ECF No. 87.) White fails to explain why he did not request this evidence while discovery was open.   Much if not all of evidence that White now requests lacks relevance to the remaining issues presented in this case.   For example, White requests video, telephone, and emails relating to his May 31, 2014, misconduct.   As explained above, the hearing officer's determination of White's guilt precludes his claims.   White failed to successfully appeal this finding in the Michigan state courts. White has the same problem with his request for security video evidence for events that led to his December 12, 2016, misconduct ticket.

White requests security video footage of his encounter with Inspector Huhtala in December of 2016.   However, White fails to explain how security video footage can assist the Court in addressing White's retaliation claim that Inspector Huhata's request to speak with White "implied" that White was snitch.

---

has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity."   *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).   Only the second exception is potentially at issue here. "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law."   *Id*. White did not request injunctive relief in his complaint.   (ECF No. 1, PageID.12.)

Finally, White has failed to explain why he was unable to make a timely discovery request for this information while discovery was ongoing in this case. Relatedly, White failed to comply with the requirements of Fed. R. Civ. P. 56(d) to justify the need for additional discovery to respond to the pending summary judgment motion.    For these reasons it is recommended that the Court deny White's motion to reopen discovery.

## VI.    White's Motion for Summary Judgment

White asserts that he is entitled to summary judgment.    (ECF No. 73.) White says that CO Goodell lacked authority to issue a disobeying a direct order misconduct ticket and retaliated with Sgt. McKay to issue the misconduct ticket. White says that CO Goodell also retaliated against him by taking his property. White asserts that CO Huhtala retaliated against him and placed his life in danger by implying that he is a snitch.    First, White has simply made conclusory allegations without any supporting factual records that could come close to showing that no genuine issue of material fact exists.    Second, as explained above, Defendants have established that no genuine issue of material fact exists that could support White's claims against them.

Finally, White has already filed a motion for summary judgment in this case raising these same claims and that motion has been considered and rejected by this Court.    (ECF No. 32 (White's motion for summary judgment); ECF No. 46 (Order Regarding Report and Recommendation).)    Under the law of the case doctrine a court should not reconsider a matter once resolved in the same proceeding.    *Howe v.*

*City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015).    Absent extraordinary circumstances where an initial decision was clearly erroneous and would work manifest injustice, a court should not revisit a prior decision that was made in the case.    *Id.*    "Unlike claim or issue preclusion, however, the law-of-the-case doctrine is not used to prevent relitigation of the same issues across different cases; rather, '[t]he purpose of the law-of-the-case doctrine is to ensure that the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result.*'"    *GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, 339 (6th Cir. 2016) citing *Howe* 801 F.3d at 739.    The Court has already decided the issues that White raises in his most recently filed motion for summary judgment when the Court denied White's first motion for summary judgment.    The previous decision denying White's motion for summary judgment is the law of the case.    White cannot reassert his arguments in a second motion for summary judgment.

## VII.    Recommendation

It is respectfully recommended that the Court grant Defendants' motion for summary judgment (ECF No. 75), and deny Plaintiff's motion for summary judgment (ECF No. 73).

It is further recommended that the Court grant Plaintiff's motion to add statements to his summary judgment motion (ECF No. 84) and deny Plaintiff's motion to reopen discovery (ECF No. 87).

If the Court accepts this recommendation this case will be dismissed.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    August 12, 2022                                    /s/ *Maarten Vermaat*
                                                                      MAARTEN VERMAAT
                                                                      U.S. MAGISTRATE JUDGE

24